IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CARLOS HENDON,

    Plaintiff,

vs.

CALIFORNIA DEPARTMENT OF
CORRECTIONS & REHABILITATION,
et al.,
    Defendants.
                                     /

No. CIV S-07-514 GEB KJM P

FINDINGS & RECOMMENDATIONS

Plaintiff is a state prison inmate proceeding pro se with an action under the Americans with Disabilities Act (ADA) and Rehabilitation Act, 42 U.S.C. § 12132 et seq. and 29 U.S.C. § 794 et seq., respectively.[1] He alleges that defendants California Department of Corrections and Rehabilitation (CDCR), Schwarzenegger and Kernan have adopted and enforced a policy of restricting law library access for inmates housed in the Psychiatric Services Unit of California State Prison-Sacramento. Defendants have filed a motion for summary judgment

---

[1] The complaint included a state law negligence claim, but the court did not direct service on that cause of action. See Order (Docket No. 6). In addition, the complaint does not rely on the Civil Rights Act, yet defendants have addressed a First Amendment access to courts claim in the motion for summary judgment. Compare Compl. at 5 with Mem. P. & A. in Supp. Mot. for Summ. J. (MSJ) at 8. The court declines to address this claim, as it was not raised in the complaint; to the extent the denial of access to the courts is necessary to plaintiff's showing under the Americans with Disabilities Act, however, the court may consider it. United States v. Georgia, 546 U.S. 151, 159 (2006).

1

arguing that plaintiff does not qualify as disabled under the ADA, there was no discrimination against him and, even if there was discrimination, it arose from a policy applicable to all inmates in restrictive housing. Plaintiff has opposed the motion and defendants have filed a reply.

I. Summary Judgment Standards Under Rule 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the

allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On December 6, 2007, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc) and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

## II.  Facts

Departmental regulations suggest that each CDCR facility must maintain a law library. 15 Cal. Code Regs. § 3120(a); but see § 3122(b) (providing that inmate may request a limited term transfer when an institution does not have a law library). Moreover, according to regulations, inmates confined in administrative segregation or in any restricted housing unit who are not serving a term of disciplinary detention may have access to legal materials available to the general population; arrangements for the delivery of legal material will be made for inmates whose housing restricts them from going to law library. 15 Cal. Code Regs. § 3164(a), (d); see also Department Operations (DOM) § 101120.10 ("Inmates confined in restricted housing units . . . shall have adequate access to legal resource material").[2]

---

[2] Defendants have submitted several declarations in support of their motion for summary judgment. In one of these, the declarant cites 15 Cal. Code Regs. § 3165 as authority for the contention that inmates in segregation have access to the law library. That section, however, refers to the mailing of legal documents. MSJ, Ex. C, Declaration of Marylyn Barnett (Barnett Decl.) ¶ 9. This declarant also cites to sections 53060.6 and 53060.10 of the DOM; defendants have not attached copies of these sections nor has the court been able to locate them in readily available legal resources.

She also refers to documents, such as a memorandum that clarified the law library access policy and to the PSU law library log, but then does not to attach these materials to her declaration. Id. ¶¶ 12-13, 19. In the same declaration, she describes plaintiff's access to legal materials through the paging system, but does not clearly indicate that she has personal knowledge of the matter, apart from her participation in reviewing plaintiff's grievance on the subject. Id. ¶¶ 18–22. The court will not consider these materials in resolving the pending motion for summary judgment. Fed. R. Civ. P. 56(e) (affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated); School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc., 5 F.3d 1255, 1262-63 (9th Cir. 1993) (if documentary evidence is cited as the source of a factual allegation, the documents must be attached to the affidavit or declaration).

1   Except for a six-week stay at Salinas Valley State Prison, since July 2004 plaintiff
2   has been housed at California State Prison-Sacramento, generally in the Psychiatric Services Unit
3   (PSU). MSJ, Ex. A at 4-10[3]; Opp'n, Decl. of Carlos Hendon (Hendon Decl.) ¶ 4. California
4   regulations define a PSU as one of several types of segregated program units:

> An inmate with a diagnosed psychiatric disorder not requiring inpatient hospital care, whose conduct threatens the safety of the inmate or others, may be housed in a PSU if the inmate is capable of participating in the unit's activities without undue risk to the safety of the inmate or others in the unit.

8   15 Cal.Code Regs. § 3341.5(b). According to plaintiff, PSU inmates must rely on the
9   institution's legal paging system to obtain legal materials unless they have established legal
10  deadlines. Hendon Decl. ¶ 6; Compl. ¶ 11.[4] According to defendants, CSP-Sacramento's law
11  library policy never excluded PSU inmates categorically, but rather gave preference to inmates
12  with court deadlines, which sometimes meant that those without deadlines were excluded. MSJ,
13  Ex. B., Decl. of D. Hamad (Hamad Decl.) ¶¶ 10-11.
14  The existence of this factual dispute does not preclude summary judgment,
15  however, for defendants have challenged plaintiff's threshold showing that he is a qualified
16  person with a disability under the ADA and the Rehabilitation Act. This challenge is discussed
17  below.
18  /////
19  /////
20  /////
21  /////

---

Defendants also have submitted the declaration of S. Kernan, the former warden of CSP-Sacramento, who relies on the response to plaintiff's grievance as the basis of her knowledge. MSJ, Ex. E, Declaration of S. Kernan. The court will not rely on this declaration either.

[3] Page references are to those assigned by the court's CM/ECF system.

[4] The complaint is submitted under the penalty of perjury and so the court relies on it in resolving the motion for summary judgment.

5

III. <u>Analysis</u>

Title II of the ADA provides:

> ... [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.  Defendants do not dispute that access to the law library is a service provided by CSP-Sacramento, which is a public entity within the meaning of the ADA.  <u>Pennsylvania Department of Corrections v. Yeskey</u>, 524 U.S. 206, 211 (1998) ("the prison law library. . . is a service . . . .").

To prove a Title II claim, a plaintiff must show:

> (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

<u>Thompson v. Davis</u>, 295 F.3d 890, 895 (9th Cir. 2002).

The Rehabilitation Act provides in pertinent part:

> No otherwise qualified individual with a disability in the United States, . . . , shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . .

29 U.S.C. § 794.

To prove a Rehabilitation Act claim, a plaintiff must demonstrate:

> (1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance.

<u>Duvall v. County of Kitsap</u>, 260 F.3d 1124, 1135 (9th Cir. 2001).  Defendants do not dispute that

6

CSP-Sacramento receives federal financial assistance.  They do argue, however, they are entitled to summary judgment because plaintiff has not shown he has a disability within the meaning of either the ADA or the Rehabilitation Act.

Under both the ADA and the Rehabilitation Act, it is the plaintiff's burden to demonstrate that he has a disability and that the disability substantially limits one or more of his major life activities, or that he has a record of such an impairment or that he is regarded as having such an impairment.  Garrett v. University of Alabama At Birmingham Board of Trustees, 507 F.3d 1306, 1310-11 (11th Cir. 2007) (Rehabilitation Act); Thornton v. McClatchy Newspapers, Inc., 261 F.3d 789, 794 (9th Cir. 2001) (ADA).  When the plaintiff has the burden of proof on a particular issue, the defendant may seek summary judgment without presenting affidavits or other evidence that negates plaintiff's claim but may instead inform the court of the basis of the motion.  Celotex, 477 U.S. at 322-23.  In this case, defendants have pointed to the issue of plaintiff's disability and what they say is his failure to allege its substantially limiting impact on his ability to undertake life activities.  See MSJ at 5.

Plaintiff counters that at the relevant time period, he was housed in a unit for inmates with serious psychiatric disabilities and suggests that this is sufficient proof.  Hendon Decl. ¶ 4; Compl. ¶ 10.  He does not provide a diagnosis or medical records, or otherwise identify the psychiatric disorder that led to his placement in this unit.  Mental impairments do indeed qualify as disabilities within the meaning of the ADA and the Rehabilitation Act, but should generally be supported by medical diagnoses.  Alderdice v. American Health Holding, Inc, 118 F.Supp.2d 856, 864 (S.D. Ohio 2000) (supported by diagnosis from medical professional); Palmer v. Circuit Court of Cook County, Social Service Department, 905 F.Supp. 499, 506 (N.D. Ill. 1995) (depression and paranoia are mental illnesses within meaning of ADA).  Plaintiff has presented nothing but his housing assignment as proof of his disability.

Even if plaintiff's placement in the PSU is sufficient proof of a disability, this is not enough to show that plaintiff is disabled under either the ADA or the Rehabilitation Act.  As

1 defendants point out, plaintiff must also show that the disability substantially limits one or more
2 of his major life activities. Garrett, 507 F.3d at 1306; Thornton, 261 F.3d at 794-95.  To be
3 substantially limited in a major life activity, "an individual must have an impairment that
4 prevents or severely restricts the individual from doing activities that are of central importance to
5 most people's daily lives." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 198 (2002).
6 This is a demanding standard, which applies to mental as well as physical impairments.  Id. at
7 197; Johnson v. City of New York, 326 F.Supp.2d 364, 369 (E.D.N.Y. 2004) (no proof that
8 plaintiff's depression and delusional psychosis rendered plaintiff unable to perform a major life
9 activity).  This court must undertake an individual assessment of the impact of a disability on
10 plaintiff's functioning.  Toyota Motor Mfg., 534 U.S. at 198.  However, plaintiff has presented
11 no evidence nor even suggested how his unidentified mental impairment undercuts his ability to
12 perform any major life activities.

13       There are two other ways in which a person claiming the protection of the ADA
14 and the Rehabilitation Act may prove a disability: by offering proof of a history of an impairment
15 that limits him in a major life activity or evidence that he was regarded as having such a limiting
16 impairment.  Thornton, 261 F.3d at 798; Johnson, 326 F.Supp.2d at 369.  Once again, plaintiff
17 has presented neither medical records showing his psychiatric history nor any indication that
18 prison officials regarded him as disabled within the meaning of the ADA.  Defendants are
19 entitled to summary judgment.

20       IT IS HEREBY RECOMMENDED that defendants' motion for summary
21 judgment (docket no. 25) be granted.

22       These findings and recommendations are submitted to the United States District
23 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty
24 days after being served with these findings and recommendations, any party may file written
25 objections with the court and serve a copy on all parties.  Such a document should be captioned
26 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

1 shall be served and filed within ten days after service of the objections.  The parties are advised
2 that failure to file objections within the specified time may waive the right to appeal the District
3 Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
4 DATED: August 24, 2009.

_____
U.S. MAGISTRATE JUDGE

2/hend0514.msj